UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **HAROLD MASON**<br><br>    Plaintiff,<br><br>    v.<br><br>**TENNESSEE BOARD OF MEDICAL EXAMINERS, AND THE BOARD MEMBERS IN THEIR OFFICIAL CAPACITY**<br><br>    Defendant. | Case No.<br>JURY DEMAND |

## COMPLAINT

Plaintiff, Dr. Harold Mason ("Plaintiff" or "Dr. Mason"), files this lawsuit against the Defendant Tennessee Board of Medical Examiners ("TBME" or "Board") and the Board's members in their official, for discriminating and retaliating against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. as amended by the Americans with Disabilities Act Amendment Act.

Plaintiff seeks all remedies, procedures, and rights allowed under the ADA and as the interests of justice require.

## PRELIMINARY STATEMENT

The Tennessee Board of Medical Examiners subjected Dr. Mason's application to heightened scrutiny on the basis of his disability. The Board violated Title II ADA when it required Dr. Mason to submit to psychiatric examination at his own expense. Dr. Mason engaged in protected activity by opposing the psychiatric examination. The Board discriminated and

retaliated Dr. Mason by requiring him to subject to a second psychiatric examination at his expense. The Board again discriminated and retaliated against Dr. Mason by requiring him to undergo a third psychiatric examination under threat of closing his application.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. § 1331.

2. This Court is the proper venue under 28 U.S.C. § 1391.

3. This action is brought under the Americans with Disabilities Act Title II (42 U.S.C. §§12131-12165) and Title V (retaliation – 42 U.S.C. §12203).

## PARTIES

4. Tennessee Board of Medical Examiners ("TBME" or "Board") was created in 1901 by an act of the State Legislature. Its mission is to protect the health, safety and welfare of people in the State of Tennessee.

5. The administrative staff of the Division of Health Related Boards supports the Board by issuing licenses.

6. The Board is a "public entity" is defined in the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., as any department, agency, or other instrumentality of a state government. 42 U.S.C.S. § 12131(B).

7. Plaintiff is an African American male.

8. Plaintiff is currently a resident of New Mexico.

9. At relevant times to this complaint he was a resident of Montgomery County Tennessee.

10. Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, as amended, 42 U.S.C.S. § 12102.

11. Plaintiff is a person with a disability as defined under 42 U.S.C. § 12102(3).

12. Plaintiff is a person with a disability as defined under 42 U.S.C. § 12102(1)(B) and (C).

13. Defendant is a public entity as defined under 42 U.S.C. § 12131(1).

14. Plaintiff is a qualified individual with a disability as defined under 42 U.S.C. § 12131(2).

15. Plaintiff is a qualified individual with a disability, and by reason of his disability, was subjected to discrimination by Defendant Board as prohibited by 42 U.S.C. § 12132.

### FACTUAL ALLEGATIONS

### Background

16. Plaintiff experienced mental health difficulties during his last year in medical school and shortly after the terrorist attacks on September 11, 2001.

17. Plaintiff experienced anxiety when flying on a plane and after hearing a plane pass overhead.

18. Plaintiff was diagnosed with bipolar disorder during his last year of medical school in 2001. At that time, Plaintiff's bipolar disorder substantially limited him in the major life activities including but not limited to sleeping.

19. Plaintiff graduated medical school in 2002.

20. Between June 2002 to April 2004 Plaintiff served as a medical intern in the United States Army.

21. From 2004 through 2006 Plaintiff was interviewing for training opportunities.

22. Plaintiff began his medicine residency in 2006.

23. Plaintiff completed his medicine residency in 2009.

24. The state of Ohio issued Plaintiff a medical training license.

25. The state of Ohio issued Plaintiff an independent license, with a 2 year probationary status because of the bipolar diagnosis.

26. In October of 2009 the state of Ohio issued Plaintiff a full medical license.

27. In 2011 the doctor who originally diagnosed Plaintiff as having a bipolar disorder provided him with a diagnosis of bipolar disorder in remission.

28. In December of 2014 the state of Indiana issued Plaintiff a full medical license.

29. In 2018 the state of Nevada issued Plaintiff a full medical license.

30. In April of 2021 the state of Alabama issued Plaintiff a full medical license.

31. By being licensed in multiples states Plaintiff increase his contract opportunities to serve as a locums (substitute) provider.

## Tennessee Board of Medical Examiners

32. In September 2021, Plaintiff began the state of Tennessee's application process for licensure as a Medical Doctor.

33. The Tennessee Medical Board of Examiners ("TBME" or "Board") "awards licenses to qualified candidates who have graduated from approved medical schools and who have completed the appropriate postgraduate work."

34. The administrative staff of the Division of Health-Related Boards supports the Board by issuing licenses.

35. In December 2021 Plaintiff completed the standard physician application for the TBME.

36. The application asked:

> Do you currently have any condition that is causing impairment that affects your ability to practice medicine with reasonable skill and safety in a competent, ethical and professional manner? (You may answer no if you are being appropriately treated and not impaired.)

4

Complaint

37. Plaintiff responded "No."

38. The Board required Plaintiff submit to a psychiatric examination based on information relating to a prior diagnosis of bipolar disorder.

39. Plaintiff sought to retain a neuropsychiatrist to conduct the psychiatric examination.

40. However, the Board refused Plaintiff's proposal and required he submit to an examination by a Tennessee Medical Foundation ("TMF") psychiatrist.

41. In March 2022, Plaintiff met with Dr. Baron a TMF psychiatrist and white male for his first psychiatric examination.

42. The Dr. Baron told Plaintiff he needed to get a "fitness for duty examination" from another psychiatrist because of the previous bipolar diagnosis.

43. The Dr. Baron, a white male, told Plaintiff, a black male, "you are a good boy" at the end of the meeting.

44. In May of 2022, Plaintiff appeared before the Board and declined to work with the TMF doctor because of his calling Plaintiff a "good boy."

45. Later, the Board sent a letter to Plaintiff requiring he submit to a second psychiatric examination.

46. The Board required it be provided Plaintiff's psychiatric examination results.

47. The second psychiatric examination was performed under the Vanderbilt Comprehensive Assessment Program ("VCAP").

48. Plaintiff complied and attended the VCAP in September 2022.

49. On September 5 and 6, 2022 Dr. Mason was assessed by VCAP Staff.

50. During the VCAP included questions spanning back to 2001 diagnosis.

51. Plaintiff paid $6,000.00 for the VCAP psychiatric assessment.

52. The VCAP staff reported the fitness for duty examination was inconclusive and recommended the following: "1. Dr. Kyser[1], or another psychiatrist who is approved by TMF, should regularly report Dr. Mason's compliance with psychiatric treatment to Tennessee Medical Foundation."

53. In a letter dated November 1, 2022, the Board sent a letter to Plaintiff informing he would be required to submit to a [third] psychiatric examination by November 24, 2022, or his application would be closed.

54. On November 15, 2022, Plaintiff e-mailed Brandi Alloccoi, Administrative Services Assistant Health Licensure and Regulation with the Tennessee Department of Health stating, " I received your letter dated November 1, 2022 on November 14, 2022 via e-mail. It is not reasonable for you to request a third examination in nine days. I am requesting until February 1, 2023, in order to comply with your request."

55. On November 16, 2022, the response he received stated: "The letter is sent to memorialize your appearance and does take time to be drafted reviewed and approved by the necessary parties. You appeared in person at the November 1, 2022, meeting and the Board's decision was announced during your interview. If you felt there was not sufficient time to complete the examination, the request for extension should have been made during the interview for the Board's Consideration.

56. Unable to obtain a medical license Plaintiff had to seek employment out-of-state.

## CAUSES OF ACTION

### COUNT I: DISABILITY DISCRIMINATION VIOLATING

---

[1] Dr. Kyser was Plaintiff's psychiatrist.

# TITLE II OF THE AMERICANS WITH DISABILITIES ACT

57. The Americans with Disabilities Act, as amended, prohibits discrimination against individuals on the basis of a mental or physical disability, a history of such a disability, or being regarded as having such a disability. 42 U.S.C. § 12101.

58. 42 U.S.C. § 12202 provides that a "[s]tate shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."

59. Congress abrogated the State's eleventh amendment immunity by specifically providing in the ADA that"[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202.

60. 42 U.S.C. § 12131 (2) defines "qualified individual with a disability" in pertinent part as "an individual with a disability who, with or without reasonable modification to rules, policies or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

61. 42 U.S.C. § 12132(2) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

62. The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202 [42 USCS § 12132]. 42 USC § 12133.

63. The term "public entity" includes "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

64. Plaintiff has property right and liberty interest in a obtaining a medical license from the board.

65. Medical licensing is a service and program of the State of Tennessee.

66. Plaintiff is person with a "disability" as that term is defined under the Americans with Disabilities Act.

67. Plaintiff has a record of bipolar disorder diagnosis and treatment.

68. Plaintiff has a history of being classified as individual with a bipolar disorder.

69. Plaintiff has a record of having a bipolar disorder that substantially limited one or more major life activities.

70. Defendant Board's application includes questions that tend to screen out individuals with a record or history disability.

71. Defendant Board subjected Plaintiff to heightened level of scrutiny throughout the licensure process because of Plaintiff's status as a person with a "disability", as that term is defined under the Americans with Disabilities Act.

72. Defendant Board's policy, procedure and/or practice of requiring individuals to submit to a "Fitness for Duty" examination if they have a record or history of mental impairment screens or tends to screen out individuals with a record or history of mental disability.

73. Defendant Board's policy, procedure and/or practice of requiring individuals with a record or history of mental disability to undergo psychiatric examinations tends to screen out individuals with disability due to delay in the licensure process.

8

Complaint

Case 3:23-cv-00940   Document 1   Filed 09/01/23   Page 8 of 13 PageID #: 8

74. Defendant Board's policy, procedure and/or practice of requiring individuals with a record or history of mental disability to pay out of pocket for the psychiatric "Fitness for Duty" examination screens or tends to screen out individuals with a disability due to the imposition of additional costs.

75. Defendant Board discriminated against Plaintiff by requiring him to undergo a psychiatric examination because of his status as a person with a "disability" under the ADA.

76. Defendant Board discriminated against Plaintiff by requiring him to undergo a psychiatric examination that broader and more intrusive than necessary to determine Plaintiff's current ability to practice medicine.

77. Defendant Board discriminated against Plaintiff by requiring him to pay out of pocket for the psychiatric examination.

78. Defendant Board discriminated against Plaintiff by disregarding VCAP's staff recommendation that a TMF approved psychiatrist regularly report Plaintiff's compliance with psychiatric treatment to TMF.

79. Defendant Board discriminated against Plaintiff by conditioning consideration of his application on his completion of a third psychiatric examination.

80. Defendant Board discriminated against Plaintiff by unreasonably increasing the delay and expense of his application because of his perceived disability or record of disability.

81. Defendant's conduct violated Title II by subjecting individuals with disabilities, like Plaintiff, to heighten scrutiny including psychiatric examinations at their own expense, based on generalizations and stereotypes.

82. Specifically, Defendant required Plaintiff to undergo an invasive psychiatric examination based on his being an individual with disability, without due process of law.

83. Title II's enforcement provision incorporates by reference § 505 of the Rehabilitation Act of 1973, 92 Stat 2982, as added, 29 U.S.C. § 794a, which authorizes private citizens to bring suits for money damages. 42 U.S.C. § 12133.

84. Defendant Board intentionally discriminated against Plaintiff on the basis of his status as a person with a "disability" and Defendant acted with deliberate indifference to Plaintiff's rights under the ADA.

85. Defendant Board's pattern or policy of discrimination was involved a continuous series of discriminatory acts, constituting a continuing violation starting with TBME's application questions through the invasive disability related inquiry the mandated related psychiatric examinations.

## COUNT II: RETALIATION VIOLATING TITLE V OF THE AMERICANS WITH DISABILITIES ACT

86. The Americans with Disabilities Act, as amended, prohibits retaliation.

87. The ADA provide "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 USC § 12203(a).

88. The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202 [42 USCS § 12132]. 42 USC § 12133.

89. Plaintiff opposed act made unlawful by Title II of the ADA, and it is Title II of the ADA that underlies the plaintiff's Title V claim.

90. Plaintiff engaged in protected activity by objecting to the Board's questions about his past medical history.

91. Plaintiff engaged in protected activity by objecting to the Board's requirement that he submit to psychiatric examination.

92. Plaintiff engaged in protected activity by objecting to disability-based questions during the psychiatric examination which were not reasonably related to his ability to meet the requirements for medical licensure in Tennessee.

93. Defendant Board retaliated against Plaintiff by requiring him to pay for a board-ordered psychiatric examination.

94. Defendant Board retaliated against Plaintiff by disregarding VCAP's staff recommendation that Dr. Kyser or a TMF approved psychiatrist regularly report Plaintiff's compliance with psychiatric treatment to TMF.

95. Defendant Board retaliated against Plaintiff by conditioning consideration of his application on his completion of a third psychiatric examination.

96. Defendant's retaliatory actions were malicious, intentional, and in willful disregard of Plaintiff's rights under the ADA.

### PRAYER FOR RELIEF

Wherefore, Dr. Mason respectfully prays this a court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA").

2. Grant a permanent injunction enjoining TBME its agents, successors, employees, attorneys and those acting in concert with them at their request from continuing to violate the Americans with Disabilities Act.

3. Enter an Order requiring the Defendant to revise its policies and procedures regarding the imposition of questions and medical examinations related to applicants' disabilities so that the policies and procedures comply with the ADA.

4. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff admission to practice without imposition of discriminatory questions or psychiatric examination, lost benefits, and compensatory, and nominal damages.

5. Enter an order requiring TBME to reimburse Dr. Mason for the expense of the psychological examination.

6. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory, and other relief is her only means of securing adequate relief.

7. Dr. Mason further prays for such other relief and benefits as the law allows and provides for and the cause of justice may require, including but not limited to an award of attorneys' fees, costs, and expenses.

8. If intentional discrimination is proven, then submitting the issue of compensatory damages to the discretion of the jury the amount.

9. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory, and other relief is his only means of securing adequate relief.

Respectfully submitted,

_____
Daniel Arciniegas TN Bar No. 35853
ARCINIEGAS LAW
1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
Telephone: 629.777.5339
Fax: 615.988.9113
Daniel@AttorneyDaniel.com

s/David Weatherman
David Weatherman
TN Bar No. 29446
THE WEATHERMAN FIRM, PLLC
1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
Telephone: 615-779-6344
Fax: 615.988.9113
David@theweathermanfirm.com

*Attorneys for Plaintiff*